

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| Stanley Vore | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 3:03-CV-1660-P BD |
| Colonial Manor Nursing Center, and | § | |
| The 22 Texas Services L.P. Occupational | § | |
| Injury Benefit Plan ("Plan") | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT AND JURY DEMAND**

### I. Introduction

1. Plaintiff Stanley Vore brings this action to recover from Defendant Colonial Manor Nursing Center ("Colonial Manor" or "Defendant") for damages for violations of the Americans with Disabilities Act, 42 U.S.C. §12101, et seq. ("ADA") by discriminatory acts toward Vore, including discharge. Plaintiff's second cause of action is a claim against the Defendant 22 Texas Services L.P. Occupational Injury Benefit Plan ("Plan") for occupational injury benefits. This claim is governed by the Employee Retirement Income Security Plan of 1974, as amended ("ERISA").

### II. Jurisdiction

2. The Court has jurisdiction over this matter pursuant to the Americans with Disabilities Act,

42 U.S.C. §12101, *et seq*. ("ADA"). Jurisdiction is conferred on the Court by 28 U.S.C. §1337, giving the District Court original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce without regard to the citizenship of the parties or the sum or value in controversy, and by 29 U.S.C. §216(b).

3.  Vore timely filed a charge with the Equal Employment Opportunity Commission against Defendant. By letter dated April 24, 2002 received by the EEOC on April 25, 2002, Vore filed a charge with the EEOC alleging disability discrimination. On October 28, 2002, Vore perfected the charge by filing Charge No. 310A300053 with the EEOC. Vore received a Notice of Right to Sue from the EEOC within 90 days of the filing of this complaint.

4.  Vore is a resident of Cleburne, Texas and was hired as a service advisor by Defendant in January 1997. Vore is an employee within the meaning of the ADA.

5.  Colonial Manor does business at 2035 North Granbury, Cleburne Texas 76031. Its attorney is Bruce A. Griggs, Esq., Ogletree Deakins, 111 Congress Ave., 4th Floor, Austin, TX 78701. Colonial Manor is an employer within the meaning of the ADA.

6.  Colonial Manor has an Occupational Injury Benefit Plan covered by ERISA. Defendant Plan is known as the 22 Texas Services L.P. Occupational Injury Benefit Plan ("Plan"). The administrator of the Plan is:

> Chuck Eastwood
> Claims Administrator
> Barron Risk Management
> 5815 Callaghan Road, Suite 100
> San Antonio, TX 78228

The Plan may be served by serving its lawyer:

Bruce A. Griggs, Esq.
Ogletree Deakins
111 Congress Ave., 4th Floor
Austin, TX 78701

7. Plaintiff demands a jury trial on his ADA claim.

### III.   Facts

8. In January 1997, Vore began employment at Colonial Manor as a charge nurse in the Medicare unit on the 3-11 p.m. shift. He was promoted to Medicare manager/TILE nurse assessor in March 1998. He was responsible for Medicare/Medicaid reimbursements. This job required a nursing license, TILE certification and MDS training, and knowledge of Medicare guidelines and the prospective payment system. Vore was also required to carry an on-call beeper and assigned to work shifts on the floor as needed. In May 1998, he was diagnosed with end stage renal disease secondary to diabetes. Vore has been a diabetic since 1978. He began dialysis in August 1998. Colonial Manor accommodated his work by allowing him to take doctors' visits and dialysis in accordance with the dialysis related illness.

9. In January 1999, Vore had a serious heart surgery with a triple bypass. He took a leave of absence and was off four weeks, returning to work late in February 1999. His position was held open. Following his return, Colonial Manor accommodated his work with post-surgery restrictions and follow up appointments.

10. In December 1999, Vore had a kidney transplant. He took another leave of absence and was

off work for six weeks. He returned to work in early February 2000. His position was held open by Colonial Manor which also accommodated him by allowing him to make frequent follow up doctors' visits and by accommodating post-surgery restrictions put on his work by his doctors.

11.     In October 2000 the administrator of Colonial Manor, Donn Tere Bradwell resigned. In December 2000, Colonial Manor hired a new administrator, Carole Hunt.

12.     In January 2001, after the appointment of the new administrator, Vore's work hours were cut to four hours a day due to excess hours and a low census in the nursing center. Though Vore was only working four-hour days, he was still required to carry an on-call beeper and work shifts on the floor as needed. Today, on-call rotation with responsibility for the floor in the absence of nursing staff is no longer a requirement of the Medicare Manager position. In mid-February 2001, Vore resumed full-time status.

13.     In April 2001, Vore developed a diabetic ulcer on his right great toe and began treatment with a podiatrist.

14.     In May 2001 the Director of Nurses Paula Wyman resigned. On June 7, 2001 after the condition of Vore's toe ulcer became worse, the doctor prescribed a cam-walker boot for him to wear to help relieve the pressure.

15.     On June 11, 2001, Colonial Manor hired a new Director of Nursing, Kate Jennings. During the week of June 18. Director of Nursing Jennings requested that Vore schedule his medical appointments (including transplant, cardiology, diabetes, orthopedics and podiatry) for one day a week so that Vore would only be out of work one day a week. Vore told her that this would not be possible. The Director of Nursing said she would be happy to call his doctors to make arrangements.

When Vore asked how far in advance she needed notice for his appointments, she said "ideally a year." Vore informed his nurse at the Transplant Clinic of this request who agreed that this would be impossible. She said that this sounded like harassment.

16.     In June/July 2001, due to vacations, absences and open positions, Vore's supervisor, Patricia Wilcox, LVN, frequently assigned him to cover shifts on the floor even when he was not on call. During this time his toe ulcer continued to get worse. His podiatrist strongly recommended that he restrict the amount of time he spent on his feet. Vore frequently told the personnel at Colonial Manor that if they could see his toe they would not let him work the floor.

17.     On July 16, 2001, Vore's podiatrist, Dr. Chandler, gave him a written restriction to be in a wheelchair while he was in the building at work. Despite this restriction, Colonial Manor frequently still assigned Vore to work the floor even though all nursing duties could not be performed from a wheelchair.

18.     On August 4-5, 2001, Vore was working shifts on the floor from a wheelchair and with a fever. He called Dr. Chandler on August 4, 2001 with a condition change. Dr. Chandler scheduled him for an appointment for August 6, 2001. On August 6, 2001, Vore was seen by his podiatrist who referred him to the transplant team due to the infection on his toe. It was now evident that there was an infection. Dr. Chandler stated that the treatment needed for Vore was beyond his expertise.

19.     On August 7, 2001, Vore told Director of Nursing Jennings that he had a medical appointment on August 8, 2001 and that his toe was infected. He expected that he would have to be hospitalized. The Director of Nursing suggested that Vore take FMLA leave and gave him a copy of the FMLA policy. The Director of Nursing suggested that, while he was out on FLMA leave, he

apply for disability.

20.    On August 8, 2001, Vore was seen by the transplant team and admitted to the hospital where he received I.V. antibiotics. On August 9 and 10, 2001 his toe was amputated requiring two surgeries. On August 14, 2001, the transplant doctor, Dr. Kielar saw him and told him he would be discharged on August 15. The transplant doctor wrote a handwritten letter stating he was not to return to work until further notice.

21.    On August 15, 2001, the Assistant Director of Nursing at Colonial Manor, Patricia Wilcox, LVN, called Vore at the hospital and stated that she had received the letter from his doctor and that Colonial Manor would start his Family and Medical Leave effective August 15.

22.    On August 21, 2001, Vore received a plant from Colonial Manor administrator Carole Hunt. Vore called her to thank her. She then informed him that his position was too important to leave vacant until he returned. She informed Vore that they had filled his position effective, Monday, August 20, 2001. She offered Vore the position of scheduling/staffing when he returned.

23.    Vore was terminated on February 26, 2002 in violation of his rights under the ADA.

### IV.    Count One - Americans with Disabilities Act.

24.    The ADA is a federal antidiscrimination statute designed to remove barriers which prevent qualified individuals with disabilities from enjoying the same employment opportunities that are available to persons without disabilities. In order to achieve this goal, the ADA prohibits - as a form

of discrimination - an employer's failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [an employer] can demonstrate that the accommodation would impose an undue hardship." 42 U.S.C. § 12112(b)(5)(A) (1995). Due to a serious health condition suffered by Vore, he was unable to perform the normal functions of his position and requested a medical leave of absence for his own serious health condition.

23. After January 1, 2001, Colonial Manor refused to accommodate Vore's disability and aggravated his condition. The termination of Vore violated his rights under the ADA.

24. Vore was discriminated against under the ADA because of his disabilities which include diabetes, renal failure and related complications. Colonial Manor failed to provide him with reasonable accommodations. Kate Jennings, the Director of Nursing, made unreasonable requests of Vore during the week of June 18, 2001 regarding medical appointments. She wanted him to schedule all his appointments including five or more medical specialties on one day a week.

25. In July 2001, Colonial Manor disregarded Vore's disability and medical condition by pulling him from an office job to work as a floor nurse, having full knowledge that work on the floor was against his doctor's advice concerning his ulcerated toe. In August 2001, Director of Nursing Jennings continued disregarding Vore's worsening medical condition. Colonial Manor forced him to work as a floor nurse in a wheelchair while he had a fever which resulted in the amputation of his toe.

26. On August 7, 2001, Director of Nursing Jennings singled out Vore for harassment based on his health condition. When Vore informed Ms. Jennings that his toe was infected and he would be

out for a doctor's appointment on August 8, Ms. Jennings recommended an FMLA leave, gave him a copy of the FMLA policy and then suggested that while out on FMLA, he could apply for disability. Ms. Jennings inferred that Vore's health condition was interfering with his job even though he was still working full time hours and it had not yet been determined that hospitalization was needed.

27.  On August 20, 2001, Colonial Manor administrator Carole Hunt replaced Vore in his position while he was still on vacation. The replacement was not required to work floor duties under any circumstances and does not have to take any "on-call" duty. The replacement was a friend of the administrator. Colonial Manor failed to make reasonable accommodations regarding his necessary medical appointments and medical condition in that no other employees were asked for a calendar of appointments a year in advance, no other nurses were required to work the floor with an open wound and that, until Vore was replaced, there was no nursing department head nurses that were on-call exempt. Today, Vore's replacement is on-call exempt.

28.  As a direct and proximate result of the above violations of the ADA, Plaintiff seeks from Defendant Colonial Manor all legal and equitable remedies, including reinstatement, back pay, front pay, loss of benefits, compensatory damages and punitive damages.

### V.    Count Two – ERISA Claim for Benefits under the Occupational Injury Benefit Plan ("Plan")

29.  Since Colonial Manor is a non-subscriber under the Texas Workers' Compensation Act, it can be sued for negligence. Colonial Manor is covered under an Occupational Injury Benefit Plan sponsored by 22 Texas Services, L.P. that, in lieu of workers' compensation, provides loss of income protection and

medical expenses for on-the-job injuries. Vore is entitled to benefits under the Plan including dismemberment benefits for loss of a toe. An employee such as Vore who was injured on the job can sue his employer and recover damages if the employer's negligence caused the injury. In this case, an employer may not use certain defenses such as the injury was caused by the negligence of a fellow employee, contributory negligence, or that the employee has assumed the risk of the employee's injury. Vore chose the Superior Benefits under the Benefit Plan.

30. By letter dated December 10, 2002, Vore made a claim for benefits under the Plan. By letter dated January 14, 2002, the Plan denied Vore's claim for benefits and stated that his request for medical coverage/treatment should be submitted in accordance with the plan document.

31. By letter dated January 16, 2003, The Plan stated that Vore did not follow Plan procedures by providing notification of an injury due to an accident or known exposure to an occupational disease within the required timeframe under the Plan. Vore did follow the requirements. Colonial Manor Nursing Center did not follow the procedures nor did they make the Plan an option to him.

32. On August 3, 2001, Vore's wound became dramatically worse, and he began running a high fever. He notified his supervisors of this and was still required to work the floor as a charge nurse. On August 7, 2001, Vore informed his supervisors that he had an doctor's appointment on August 8, 2001, and that he felt it would be highly likely that he would be hospitalized. His supervisor's response was to suggest that he take his vacation time, request a Medical Leave of Absence, and that Vore should apply for disability. The option of being sent to an approved Doctor under the Plan was never given to Vore.

33.     In the summer of 2001, Vore's toe became worse. On August 9-10, 2001, Vore's toe was amputated by Dr. Early. Vore's supervisors were kept apprised of all developments as they occurred. Vore's supervisors were also made aware that Vore felt that being required to work the floor as a charge nurse was responsible for Vore's condition. Vore's supervisors again did not make the Occupational Injury Benefit Plan available to him. Vore was released from the Hospital and sent home.

34.     Colonial Manor was negligent in its treatment of Vore and Vore should be entitled to benefits under the Plan. Under the Plan, Vore is entitled to unlimited medical benefits, 85% of lost wages for up to 104 workweeks, impairment income benefits of 85% of normal pay payable for three weeks for each percentage point of impairment, and supplemental income benefits because of injury combined for up to 104 weeks. Vore also is entitled to a dismemberment benefit for the amputation of his toe.

### VI.     Count Three - Exemplary Damages.

35.     The conduct of Defendant Colonial Manor described above was not the result of accident, inadvertence or mistake, but occurred with the fixed intention of injuring Plaintiff. The actions of Defendant were taken and carried out with actual malice, with ill will and spite toward Plaintiff, and with the desire to inflict injury and damage upon Plaintiff without any cause or excuse.

36.     As a direct and proximate result of the above legal violations, Plaintiff has suffered loss of earnings and earning capacity, damage to his good name and reputation, loss of pension and fringe benefits, loss of a beneficial economic relationship with Defendant Colonial Manor, and loss of the

ordinary pleasures of everyday life, including a right to pursue gainful occupation of choice. Defendant discriminated against Plaintiff and terminated him because of his disability. He has suffered mental anguish and emotional distress because of this unfair and illegal treatment and termination.

37.     Plaintiff is entitled to recover punitive damages under the ADA to punish Defendant Colonial Manor for its wrongful conduct and to prevent and deter others with similar inclinations from committing similar acts in the future.

### VII.     Count Four - Attorneys' Fees.

38.     The wrongful conduct of Defendants has required Plaintiff to retain the undersigned attorneys to initiate and prosecute this lawsuit. Plaintiff has agreed to pay said attorneys a reasonable fee for their services and to reimburse them for expenses incurred in this lawsuit. Plaintiff is entitled under the ADA, ERISA and common law to recover their reasonable and necessary attorneys' fees, and expenses incurred in prosecuting this lawsuit. Accordingly, Plaintiff should be awarded such attorneys' fees and expenses as established at trial.

### VIII.     Relief Requested

39.     Wherefore, and for all of the foregoing damages and losses, Plaintiff demands judgment as follows:

A. Equitable Relief:

1. An order out of this Court reinstating Plaintiff in a position comparable to that which he formerly held or should have held with Defendant Colonial Manor and such other equitable relief necessary to end the discriminatory practices of Defendant Colonial Manor.

2. An award of back pay, front pay and lost fringe benefits, including damages for lost earnings capacity.

3. An award of Benefits under the Occupational Injury Benefit Plan ("Plan").

4. An award of interest, costs and reasonable attorney's fees and whatever other relief may appear appropriate at the time of final judgment.

B. Legal Relief:

1. Compensatory damages in whatever amount Plaintiff is found to be entitled, together with interest, costs and attorney's fees.

2. Punitive damages against Defendant Colonial Manor in whatever amount it is found to be entitled under the ADA.

3. Reasonable and necessary attorneys' fees and expenses as sought in Count Five.

4. Pre-judgment interest at the highest rate allowed by law.

5. Post-judgment interest at the highest rate allowed by law.

6.  All costs of court.

7.  Such other and further relief at law or in equity, to which Plaintiff may be justly entitled.

Dated: October 17, 2003

                                    **Respectfully submitted,**

                                    Douglas K. Magary
                                    State Bar No. 12810500
                                    **MAGARY & ASSOCIATES**
                                    **15150 Preston Road, Suite 300**
                                    **Dallas, Texas 75248**
                                    **Tel: 214-343-9100**
                                    **Fax: 214-503-9231**
                                    **Attorneys for Plaintiff**

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies on July 25, 2003, he conferred with the attorney of record for Defendants and he agrees that Plaintiff can file this amended complaint.

                                    Douglas K. Magary

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served upon the attorneys of record for the Defendants by Fax and Regular Mail on October 17, 2003

                                    Douglas K. Magary